107 F.3d 5
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Elios RAMOS, Defendant-Appellant,
Raul Vega, Carlos Garcia, Christopher Perry, and Scott
Baker, Defendants.
 No. 96-1402.
 United States Court of Appeals, Second Circuit.
 Jan. 23, 1997.
 
 APPEARING FOR APPELLANT: Bradley S. Stetler, Stetler & Allen, Burlington, VT.
 APPEARING FOR APPELLEE: John-Claude Charbonneau, Assistant United States Attorney, Rutland, VT.
 Before VAN GRAAFEILAND, LEVAL and CABRANES, Circuit Judges.
 
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the District of Vermont and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.
 
 
 3
 Defendant-Appellant Elios Ramos appeals from a judgment of the United States District Court for the District of Vermont (Billings, J.), sentencing him, upon his guilty plea to the charge of conspiring to distribute cocaine in violation of 21 U.S.C. § 846, to a term of imprisonment of 78 months, followed by a term of supervised release of four years.
 
 
 4
 Ramos, a New York resident, was arrested in Rhode Island on March 8, 1994, and charged with conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. A grand jury in Burlington, Vermont, later issued an indictment charging Ramos with conspiring between September 1993 and March 1994 to distribute cocaine in Vermont.
 
 
 5
 After two continuances, Ramos was scheduled to go to trial on August 8, 1995. He was represented by Scott A. Lutes, a Rhode Island attorney, and Vermont attorney Bernard J. Boudreau acted as local counsel. On July 31, 1995, Lutes moved for another continuance and the court denied this motion. On August 8, 1995, Ramos signed a plea agreement with the government pursuant to Fed.R.Crim.P. 11(e)(1)(B). The agreement provided that Ramos would plead guilty to one count of conspiracy to distribute cocaine and that the government would recommend that the court (1) sentence him at the low end of the guidelines range and (2) give him credit for acceptance of responsibility. In the agreement, Ramos acknowledged that the court was not obliged to accept the government's recommendations and that he could not withdraw his plea if the court rejected those recommendations. He also expressed satisfaction with Lutes' performance.
 
 
 6
 At a hearing on August 8, 1995, Ramos told the court that he had discussed his plea with his attorney, with whom he was satisfied, that he understood the circumstances and his rights, that his plea was voluntary, and that he realized that he could not withdraw his plea if the court did not follow the government's sentencing recommendations. Ramos then entered his guilty plea.
 
 
 7
 On September 8, 1995, Ramos moved pro se to withdraw his guilty plea. Claiming ineffective assistance of counsel, he alleged principally that Lutes coerced him to plead guilty by telling him that the jurors in his trial would be white and would not believe him because he is black. On September 28, 1995, Lutes sought and was granted leave to withdraw as counsel. In an order dated October 2, 1995, the court denied Ramos' motion to withdraw his plea, finding that he had demonstrated no "fair and just reason" to do so and that Ramos had simply experienced a "change of heart" about his plea.
 
 
 8
 Later in October 1995, Boudreau moved to withdraw as Ramos' local counsel because he had discovered that one Todd Fuller, whom he had previously represented, was a potential witness against Ramos. The court granted this motion and appointed new counsel.
 
 
 9
 On February 12, 1996, Ramos filed a pro se motion to withdraw his plea on the grounds that he had received ineffective assistance of counsel. On March 7, 1996, his new attorney filed a motion seeking reconsideration of the court's denial of Ramos' first motion to withdraw his plea. His attorney argued that Ramos' plea was not voluntary (1) because Lutes had convinced him that he could not obtain a fair trial because of the racial composition of a Vermont jury and (2) on account of an alleged conflict of interest arising from Boudreau's prior representation of a potential government witness.
 
 
 10
 On April 25, 1996, the court held a hearing on Ramos' motion. Ramos testified about the circumstances on August 8, 1995, when he decided to plead guilty. He said that Lutes had told him that he could not prevail at trial because "they have too many witnesses" and the all-white jury would not believe the testimony of a "black Hispanic." Ramos testified that Boudreau told him "listen, you got no choice, why don't you just do the best of the worse?" Ramos also said that he was very confused when he signed the plea agreement and that he had not understood the questions posed by the court during the plea colloquy.
 
 
 11
 By order dated May 6, 1996, the court denied Ramos' motion to withdraw his plea. The court did not credit Ramos' "self-serving" allegations about Lutes, which contradicted his sworn statements at the plea allocution. The court found that Boudreau's limited role in the case had not resulted in prejudice, particularly as Boudreau discovered the potential conflict only after Ramos had pleaded guilty.
 
 
 12
 Ramos's pre-sentence report indicated that his offense involved 2-3 kilograms of cocaine and calculated an offense level of 28. After Ramos objected to the amount of cocaine attributed to him, the court held a hearing on June 13, 1996. Raul Vega, one of Ramos' coconspirators, testified that Ramos had offered to sell him two kilograms of cocaine, but that he had purchased only the first kilogram before his arrest. A DEA agent testified that Vega had told another agent that Ramos had supplied him with 3.5 kilograms of cocaine between January and March of 1994. Finally, Ramos testified that he had never distributed cocaine.
 
 
 13
 On the basis of this testimony, the court found "from [ ] reliable evidence" that Ramos' offense involved "at least" two kilograms of cocaine and therefore concluded that the base offense level was 28. Given Ramos' criminal history, this resulted in a sentencing range of 78 to 97 months. The court imposed a sentence of 78 months, followed by a four-year term of supervised release.
 
 
 14
 On appeal, Ramos advances three arguments. First, he contends that the district court could not accept his plea until it had accepted the plea agreement, which it could not do until it received the presentence report. On this basis Ramos claims that he was entitled to withdraw his guilty plea at any time before the presentence report arrived and the court definitively accepted his plea and the underlying plea agreement. Second, Ramos argues that he demonstrated a valid reason to withdraw his plea and that the court abused its discretion by denying him leave to do so. Third, Ramos maintains that the court had no evidentiary basis for its finding that his offense involved two kilograms of cocaine.
 
 
 15
 U.S.S.G. § 6B1.1(c) requires the court to "defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and [its] decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the pre-sentence report." This language makes clear that a court may not accept a plea agreement under the latter two provisions until it receives the pre-sentence report. In contrast, a court may accept a plea agreement under 11(e)(1)(B) before reviewing the pre-sentence report, but must not act on recommendations in the agreement until after such review.
 
 
 16
 The record shows that the court accepted Ramos' Rule 11(e)(1)(B) plea agreement on August 8, 1995, and properly deferred decision on the government's recommendations until after receipt of the pre-sentence report. We therefore find that Ramos entered a final plea of guilty on August 8, 1995, and was not entitled to withdraw that plea without showing a "fair and just reason," as required by Fed.R.Crim.P. 32(e).
 
 
 17
 We also find no error in the district court's conclusion that Ramos had shown no "fair and just reason" justifying withdrawal of his plea. The record contains ample evidence to support the finding that Ramos's plea was knowing and voluntary. Finally, we find no merit in Ramos's claim that the court should have calculated his offense level on the basis of one kilogram of cocaine (the amount delivered) and not two kilograms (the original amount agreed upon in the conspiracy). U.S.S.G. § 2D.1.1 app. note 12 provides that if there is an agreement to sell drugs, the court should determine the offense level by using the total amount of drugs agreed upon, unless the sale is completed and the amount delivered better represents the scale of the offense. The testimony at the sentencing hearing shows that the conspirators had not completed their transaction at the time of their arrest; Ramos intended to supply the second kilogram of cocaine after receiving payment for the first. Because the arrest of the conspirators prevented them from completing their transaction, the district court correctly applied an offense level corresponding to two kilograms of cocaine.
 
 
 18
 We affirm the judgment of the district court.